**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
HYLAS YACHTS, INC.,                     )
                                        )
         Plaintiff,                     )
                                        )
    v.                                  )        Civil Action No. 12-10468-DJC
                                        )
T3 VISTAS, LLC and RICHARD STROTHER,    )
                                        )
         Defendants.                    )
_____)

## STATEMENT OF REASONS

Casper, J.                                                    April 30, 2012

## I.    Introduction

Plaintiff Hylas Yachts, Inc. ("Hylas") brings this action against Defendants T3 Vistas, LLC,

("T3 Vistas") and Richard Strother ("Strother") (collectively, "the Defendants") alleging common law

claims including breach of contract and fraud in connection with Hylas' sale of a custom-built yacht

to the Defendants.  Hylas has moved for a temporary restraining order and preliminary injunction,

seeking to have the Defendants terminate all Uniform Commercial Code ("UCC") filings against Hylas,

to enjoin the Defendants from filing further UCC statements against Hylas or otherwise interfering with

its sale of the yacht to a third-party buyer and to enjoin the Defendants from interfering with or

arresting  the yacht after it is sold to the third party.  The Defendants moved to dismiss this action for

lack of personal jurisdiction, D. 10 (which the Court denied for the reasons stated on the record at the

motion hearing on March 30, 2012) and further moved to compel arbitration and stay this matter.  For

the reasons stated below, the Defendants' motion to compel arbitration is DENIED and Hylas' motion

for a temporary restraining order and preliminary injunction is GRANTED.

1

II.    **Discussion**

A.    **The Defendants' Motion to Compel Arbitration**

On August 1, 2008, Hylas and T3 Vistas entered into a sales agreement in which Hylas agreed to construct and T3 Vistas agreed to purchase "one Hylas 70, Twin Wheel, Center Cockpit Deck Design, with Shoal Draft Keel (the 'Yacht')."  Sales Agreement, § 1 attached as Ex. A to Affidavit of Richard Strother ("Strother Aff."), D. 15.  Strother executed this agreement on behalf of T3 Vistas. Id.  It is undisputed by the parties that the Sales Agreement between them for the purchase of the Yacht contained an arbitration clause, that the parties agreed to arbitration as the means of resolving disputes arising from such purchase under the Sales Agreement and that the arbitration clause applies to this dispute.  Pl. Mem. at 7-8, D. 14.[1]  Hylas argues, however, that Defendants waived their right to arbitrate this matter by filing an action against Hylas in the Southern District of Florida on March 13, 2012, the same day as this action, arising from the present dispute between the parties and raising virtually identical claims to those in the complaint in this action.

To determine whether a party has acted inconsistently with, and therefore waived, its right to arbitrate, the Court considers the following factors:

> whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right . . . whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff . . . whether there has been a long delay in seeking a stay or whether the

---

[1] The arbitration clause in the Sales Agreement provides in pertinent part:   "[a]ny dispute arising under this Agreement which cannot be resolved between the Parties through negotiation shall be settled by a panel of three arbitrators in binding arbitration . . . .  The Arbitrators shall apply the substantive laws . . . of the state of Massachusetts and the [U.S.] . . . ."  Sales Agreement, § 12 attached as Ex. A to Strother Aff., D. 15.

enforcement of arbitration was brought up when trial was near at hand . . . .

Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc., 403 Mass. 772, 775-76 (1989) (citations omitted); see Jones Motor Co., Inc. v. Chauffeurs, Teamsters and Helpers Local Union No. 633 of N.H., 671 F.2d 38, 44 (1st Cir. 1982) (listing the same factors). The Court also looks to "whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings . . . whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration) had taken place . . . and whether the other party was affected, misled, or prejudiced by the delay . . . ." Home Gas, 403 Mass. at 776 (citations omitted).

Considering these factors, the Court finds that the Defendants have waived their right to arbitrate this matter. Although the case pending in the Southern District of Florida has not proceeded to discovery and it appears that the parties have not engaged in any further litigation after the filing of the complaint there, the Defendants have neither voluntarily dismissed that case (in light of their motion to compel arbitration here) nor indicated any intention of doing so. By maintaining a pending action in the Southern District of Florida that involves essentially the same dispute between the parties as the instant action[1] and not seeking, as they are here, to arbitrate the dispute, the Defendants have acted inconsistently with their right to arbitrate this matter. That is, although both federal cases - here and in Florida - are in their infancy, it is inconsistent with the right to arbitration for the Defendants to have filed suit in the Southern District of Florida with one hand and be asking this Court to compel a nearly identical suit brought by Plaintiff Hylas in this Court with the other hand. Given this

---

[1]Defendants acknowledge as much in their papers. Def. Mem. in Opp. to Pl. Mot. for Preliminary Injunction and in Support of Def. Cross-Mot. to Stay Litigation and to Compel Arb. at 6, D. 14 (stating that both complaints "appear to be Breach of Contract actions over identical issues").

inconsistency, the Defendants' pending action against Hylas in the Southern District of Florida constitutes a waiver of its right to arbitrate this matter. Accordingly, the Defendants' motion to compel arbitration is DENIED.

### B.       Hylas' Motion for Preliminary Injunction

To obtain the extraordinary remedy of a preliminary injunction, a plaintiff must show that:  (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest.   Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).   Likelihood of success on the merits is the critical element of the four-factor framework. Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993).

Hylas has made a showing sufficient to demonstrate a likelihood of success on the merits at least as to its breach of contract claim and insofar as the complaint seeks declaratory judgment that the Defendants neither have an existing security interest in the Yacht nor authority to file the financing statements concerning such interest -- claims at the heart of the parties' present dispute.  Hylas seeks to enjoin the Defendants from filing further UCC statements against Hylas or otherwise interfering with its sale of the Yacht to a third-party buyer, to enjoin the Defendants from interfering with or arresting the yacht after it is sold to a third party and seeks an order that the Defendants terminate its UCC financing statements in Massachusetts.

### 1.       Likelihood of Success on the Merits

#### a.       Breach of Contract (Count I)

After considering the facts alleged in the complaint, the memorandum in support of the motion for preliminary injunction, the affidavits filed in support of the motion (and exhibits attached thereto),

the filings by both parties related to the motion for preliminary injunction, and the arguments by both

parties at the motion hearings, the Court finds that Hylas has shown a likelihood of success on the

merits as to its breach of contract claim.

Under Massachusetts law, to establish a breach of contract claim, a plaintiff must show: 1)

existence of a valid and binding contract, 2) that the defendant breached the terms of the contract, and

3) the plaintiff has suffered damages from the breach.  Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115,

1122 (1st Cir. 1995) (applying Massachusetts law).  At issue here is the Sales Agreement governing

T3 Vistas' purchase of the Yacht built by Hylas.  The Sales Agreement provides that "within one week

of the yacht's safe delivery to the chosen yard of commissioning, the balance of payment due, less an

amount of $100,000 shall be paid to Hylas Yachts, Inc.  The final balance of $100,000 shall be due

upon Closing when the sea trial is completed and the yacht is fully sound and seaworthy."  Sales

Agreement at ¶ 8 (setting forth terms for delivery and closing) attached as Exhibit 1 to the affidavit of

Kyle Jackney ("Jackney Affidavit"), D. 3).  The Sales Agreement provides a security interest in the

Yacht "to the extent completed, and a security interest in all work and equipment performed upon or

installed in the Yacht or placed on board the Yacht" to T3Vistas "for security purposes only to the

extent of all payments previously made by the Buyer to the Seller."  Id. at ¶ 7.  The Sales Agreement

further provides that Hylas would file the "security interest with the State of Florida and such interest

shall be extinguished when title to the Yacht is transferred to the Buyer."  Id.  Hylas claims that

T3Vistas breached the Sales Agreement by failing to pay the balance of the purchase price of the Yacht

due when it was delivered on November 9, 2011.  For the purposes of their opposition to the motion,

the Defendants do not dispute that they failed to pay the balance due upon Hylas' delivery of the Yacht.

Rather, the Defendants appear to argue that Hylas breached the Sales Agreement first when it did not

file the security interest with Florida, and a result, T3Vistas was no longer obligated to perform (by paying the balance due upon delivery of the Yacht) under the Sales Agreement.  3/30/12 Tr. at 13-14.

"[A] material breach by one party excuses the other party from further performance under the contract."  Ward v. Am. Mut. Liab. Ins. Co., 15 Mass. App. Ct. 98, 100 (1983) (citation omitted); see also O'Connell Mgmt. Co., Inc. v. Carlyle-XIII Managers, Inc., 765 F. Supp. 779, 783 (D. Mass. 1991) and cases cited.  "Once relieved from performance, the injured party is not liable for further damages incurred by the party in material breach."  Lease-It, Inc. v. Mass. Port Auth., 33 Mass. App. Ct. 391, 397 (1992).  Thus, T3Vistas can only be excused from performing under the Sales Agreement if Hylas' failure to file the security interest with Florida constitutes a material breach of the agreement.  "A material breach of an agreement occurs when there is a breach of 'an essential and inducing feature of the contract[ ].'"  Id. at 396 (alteration in original) (quoting Bucholz v. Green Bros. Co., 272 Mass. 49, 52 (1930)).  That is, the breach must go to "root of the contract."  Aerostatic Engr. Corp. v. Szczawinski, 1 Mass. App. Ct. 141, 145 (1973).  At the heart of the Sales Agreement is Hylas' promise to build a yacht in exchange for T3Vistas' promise to make payments for that service including deposits and the full balance due upon delivery of the Yacht by Hylas.  As alleged in the complaint, Hylas fulfilled its promise under the Sales Agreement to build and deliver the Yacht to Strother or that T3Vistas failed to pay the balance of the purchase price (as it was required to do under the Sales Agreement) upon delivery and take title.  The Defendants fail to explain how the filing of the security interest in the Yacht in Florida constitutes an essential term of the Sales Agreement or goes to the heart of the Sales Agreement to support a finding that Hylas' failure to do so amounted to a material breach of the agreement.  It, therefore, cannot be said that Hylas' failure to file the security interest with Florida relieved T3 Vistas of its duty to perform under the Sales Agreement.

Moreover, the Defendants' argument that they only agreed to purchase the Yacht based upon Hylas' prior promise to him that it would obtain financing for him is unsupported by the record.  The Defendants offer no evidence of Hylas' purported promise to Strother prior to the execution of the Sales Agreement.  Even assuming Defendants had offered some evidence of this prior promise, such promise is absent from the Sales Agreement governing the purchase of the Yacht.  A party cannot seek to admit evidence of prior agreements where, as here, the executed agreement between the parties is integrated and represents their complete and final agreement. See Sales Agreement § 16 (providing that the agreement "shall constitute the entire agreement of the parties with respect to the subject matter hereof . . . .").  The parol evidence rule "bars the introduction of prior or contemporaneous written or oral agreements that contradict, vary, or broaden an integrated writing." Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 496 (1997); see also Sound Techniques, Inc. v. Hoffman, 50 Mass. App. Ct. 425, 429 (2000) (stating that "written agreements may not be varied or added to by parol evidence of antecedent or contemporaneous negotiations").  Because the Sales Agreement constitutes the parties' final and complete agreement for the purchase of the Yacht, the Defendants may not offer any evidence to contradict or modify its terms to include a prior promise for financing.

Accordingly, Hylas has demonstrated a likelihood of success on the merits of its breach of contract claim.

> **b.      Declaratory Judgment that the Defendants Have No Security Interest in the Yacht and Had No Authority to File Financing Statements Concerning Such Interest (Count XII)**

Hylas has further demonstrated that it is likely to prevail on its claim that Defendants have no security interest in the Yacht and thus had no authority to file the UCC financing statements in Massachusetts placing a lien on the Yacht, the very action that Hylas now seeks to enjoin.  A security

interest is "an interest in personal property . . . which secures payment or performance of an obligation."  Mass. Gen. L. c. 106 § 1-201(37).  It is created by a security agreement, "an agreement that creates or provides for a security interest."  Mass. Gen. L. c. 106 § 9-102(a)(73).  Here, the Sales Agreement provided a security interest to T3 Vistas "in all work and equipment performed upon or installed in the Yacht or placed on board the Yacht" which was "for security purposes only to the extent of all payments previously made by the Buyer to the Seller."  D. 12-1.   The Sales Agreement also created a "security interest in all equipment at the Seller's commissioning shipyard . . . and all materials and equipment of the Seller located elsewhere for use in the performance of this agreement, to the extent the Buyer has paid therefore . . . for security purposes only."  Id.  That is, the Sales Agreement provided a security interest in the equipment and work on the Yacht while it was being built, but only to protect T3 Vistas' payments towards the construction of the Yacht in the event that Hylas was unable to fulfill its obligations under the Sales Agreement - i.e., successful completion and delivery of the Yacht.  Consistent with the Sales Agreement, T3 Vistas paid Hylas two deposits totaling $326,000: the first, in the amount of $163,000 when the parties executed the Sales Agreement on August 1, 2008 and the second, in the amount of $163,000 paid five months later, on January 1, 2009.  D. 12-1 (Payment Schedule).

The Sales Agreement provides that "[w]ithin one week of the yacht's safe delivery to the chosen yard of commissioning, the balance of payment due, less an amount of $100,000 shall be paid to Hylas" and the "final balance of $100,00 shall be due upon Closing . . . ."  D. 12-1.  In the instant case, it is likely that T3 Vistas' failure to pay the full balance due upon Hylas' delivery of the Yacht, constituted a material breach of the Sales Agreement since payment for the Yacht was T3 Vistas' primary obligation under the Sales Agreement and, therefore, went to the heart of the Sales Agreement.  See

8

Teragram Corp. v. Martketwatch.com, Inc., 444 F.3d 1, 12 (1st Cir. 2006) (affirming conclusion that as a matter of law, breach was material where defendant's failure to pay, the only obligation it had under the contract, constituted a material breach of the parties' agreement); Lease-It, 33 Mass. App. Ct. at 396 (holding that where a party's only obligation under a contract was to pay, its failure to do so amounted to "substantial breach going to the root of the contract" that released the other party from further performance).

Here, Defendants now seek to enforce the security interest provision in the Sales Agreement. That provision, however, was granted to secure Hylas' performance of its promise to build and deliver the Yacht, which Hylas performed in accordance with the Sales Agreement.   When T3 Vistas' performance of its obligation to pay the full balance for the Yacht became due, it failed to perform. Because it is likely that T3 Vistas' failure to make the final payments for the Yacht amounted to a material breach of the Sales Agreement, it is also likely that because of that breach, T3 Vistas would not be able to enforce the agreement's provision creating a security interest in the Yacht for deposit payments.  The security interest was created to protect T3 Vistas (and its deposit payments) in the event Hylas could not complete the Yacht.   Once Hylas performed its obligations by completing and delivering the Yacht, the security interest lost its purpose as there was no longer any performance of an obligation (Hylas's obligation to build and deliver the Yacht)  to secure with a security interest.   It is thus likely that T3 Vistas' security interest to secure performance of Hylas' obligation to build and deliver the Yacht was extinguished. Cf. Harder v. United States, 1993 WL 667770, at *8 (D. Mass. Aug. 18, 1993) (concluding that debtor's payment of the underlying debt on two promissory notes from proceeds of another note discharged the underlying debt and thus, the security interest for that debt); Kropp v. Ziebarth, 601 F.2d 1348, 1357 (8th Cir. 1979) (finding that because neither buyer nor seller

of cattle were entitled to recover money under the contract extinguished the security interest seller retained in the cattle and terminated any obligations between the parties).

With respect to the financing statements, T3 Vistas is listed as the secured party on the initial financing statement (UCC-1 Form) and adds Strother as a secured party on the Amendment to the initial financing statement (UCC-3 Form).   Ex. 5 to the Affidavit of Richard Strother in Support of Motion to Dismiss for Lack of Personal Jurisdiction, D. 12.  To be secured parties, the Defendants must be "person[s] in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding."  Mass. Gen. L. c. 106, § 9-102(a)(72).  T3 Vistas argues it is a "secured party" because it has a security interest under the Sales Agreement and thus authority to file the financing statements at issue.  See Mass. Gen. L. c. 106, § 9-509 (listing requirements for filing financing statements).  At the time T3 Vistas filed the initial financing statement (and at the time the amendment was filed adding Strother as a secured party), T3 Vistas could have done so only if it held a valid security interest.  However, as discussed above, it is likely that the security interest was extinguished before T3 Vistas made these filings.

Accordingly, Hylas has demonstrated that it is likely to prevail on its claim that as a result of T3 Vistas' material breach and Hylas' performance under the contract, T3 Vistas no longer had a security interest in the Yacht, could not seek to enforce the security interest provision of the Sales Agreement and therefore had no authority, three years later, to file the UCC-1 and UCC-3 statements in Massachusetts placing a lien on the Yacht.

### 2.      Irreparable harm

The movant bears the burden of demonstrating that a denial of a preliminary injunction would cause irreparable harm.  Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir.

1996).   Hylas has satisfied its burden here.   Hylas has agreed to sell the Yacht to a third party.

Purchase and Sale Agreement, D. 32.   Hylas claims it will likely breach its Purchase and Sale

Agreement with that buyer and will be liable for damages and other costs as a result if the sale is not

completed.  Hylas further argues that it will be unable to resell the Yacht because the UCC-1 and UCC-

3 filings have clouded Hylas' title.  Although the Defendants have previously indicated that they will

seek to arrest the Yacht if Hylas were to sell it to another buyer to prevent the buyer from using it, this

position seems to be inconsistent with the Defendants' representation at oral argument that it "does

make sense to go through with [the] sale," 3/30/12 Hearing Tr. at 13; see also 3/21/12 Hearing Tr. at

8.  These representations are in fact more aligned with Hylas' interest in injunctive relief including the

termination of the financing statements which have effectively placed a lien on the Yacht and prevented

Hylas from selling it to a third party.[1]

### 3.       Balance of Hardships

The Court finds that the harm to Hylas outweighs the harm to the Defendants.   As discussed

above, Hylas is likely to prevail on its claim that the Defendants breached the Sales Agreement and that

the Defendants have no existing security interest in the Yacht or the authority to file financing

statements concerning that interest.   By selling the Yacht, Hylas attempts to mitigate its damages for

the Defendants' breach.  As previously noted, the Defendants have indicated that allowing the sale to

move forward may be in the best interest of both parties.  See 3/30/12 Hearing Tr. at 13; 3/21/12

Hearing Tr. at 8.  The Defendants have offered no reason why the injunctive relief Hylas requests

would impose any undue hardship on them.

---

[1]A court may order the termination of a financing statement and amendment.  See, e.g., United
States v. McCloud, 2008 WL 4277302, at *9 (E.D. Mich. Sept. 17, 2008) (ordering financing
statements and amendments declared to be ineffective and ordering the termination of the
financing statements and amendments by the office of the Secretary of State of Michigan).

####   4.        Public Interest

The public is served by granting Hylas injunctive relief.  The public has an interest "in requiring parties to honor their contractual obligations."  <u>Dunkin' Donuts Franchised Rest. LLC v. ABM Donuts, Inc.</u>, 2011 WL 6026129, at *8 (D.R.I. Oct. 4, 2011).  The public also has an interest in ensuring that parties filing financing statements to perfect a security interest have the authority to do so.  <u>Cf.</u> Mass. Gen. L. c. 106 § 9-625 (providing remedies for failure to comply with filing requirements).

In sum, the Court finds that:   (1) Hylas is likely to succeed on the merits of its claims, at least as to the breach of contract claim and insofar as it seeks a declaratory judgment that the Defendants have neither a security interest in the yacht nor authority to file financing statements with respect to that interest which is the essence of the parties' dispute here; (2) Hylas is likely to suffer irreparable harm if the injunction is not granted; (3) the balance of equities tips in Hylas' favor; and (4) the injunction is in the public interest. Accordingly, Hylas has satisfied its burden of showing that its request for a preliminary injunction is warranted.

### III.   Conclusion

For the foregoing reasons, Hylas' motion for a preliminary injunction is GRANTED.

**So ordered.**

/s/ Denise J. Casper<br>United States District Judge