UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____

HYLAS YACHTS, LLC            )
       *Plaintiff,*         )
                  )
v.                     )      CIVIL ACTION NO. 1:12-cv-10468-DJC
                  )
T3 VISTAS, LLC, and     )
RICHARD STROTHER     )
       *Defendants.*      )
_____)

**ANSWER, DEFENSES AND COUNTERCLAIMS OF DEFENDANTS
RICHARD STROTHER AND T3 VISTAS, LLC.**

Defendants, Richard Strother and T3 Vistas, LLC (hereinafter referred to "Strother" or "T3" individually or as "Defendants" collectively) state as follows in response to each paragraph of the Plaintiff, Hylas Yachts, LLC's (hereinafter "Hylas" or "Plaintiff") Verified Complaint:

**Parties**

1. Admitted

2. Denied.  Defendants admit only that T3 is a Limited Liability Company.

3. Admitted

**Jurisdiction and Venue**

4. The allegations in paragraph 4 contain legal conclusions to which no response is required.  To the extent that a response is required, defendants deny the allegations.

5. The allegations in paragraph 5 contain legal conclusions to which no response is required.  To the extent that a response is required, defendants deny the allegations.

6. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same.

7. The allegations in paragraph 7 contain legal conclusions to which no response is required.  To the extent that a response is required, defendants deny the allegations.

8. Denied.

9. Denied.  Defendants admit only that the Agreement speaks for itself.

10. Denied.  Defendants admit only that UCC financing statements were filed to protect T3's security interest in Hull # 7 following plaintiff's failure to do so in accordance with the terms of the Agreement.

**Facts**

11. Denied.  Defendants admit only that the subject matter of any interest was the possible assignment or purchase of a contract from Fran Schwenk.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.  Defendants admit only that the Agreement speaks for itself.

18. Denied.  Defendants admit only that the Agreement speaks for itself.

19. Denied.  Defendants admit only that the Agreement speaks for itself.

20. Denied.  Defendants admit only that the Agreement speaks for itself, namely that paragraph 3(c) "Payment Schedule" provided "the balance shall be paid upon <u>delivery</u> as provided in Paragraph 8."  While 3(d) provided "A final payment …shall be made at the Closing."  While Paragraph 5 provided "Seller agrees… to present the Yacht to the Buyer at the <u>delivery</u> in completely sound condition with all systems and equipment operating safely and properly."

21. Denied.  Defendants admit only that payments were timely made to Hylas by T-3 pursuant to the terms of the Agreement.

22. Denied.  Defendants admit only that the Agreement speaks for itself, namely that paragraph 3(c) "Payment Schedule" provided "the balance shall be paid upon <u>delivery</u> as provided in Paragraph 8."  While 3(d) provided "A final payment …shall be made at the Closing."  While Paragraph 5 provided "Seller agrees… to present the Yacht to the Buyer at the <u>delivery</u> in completely sound condition with all systems and equipment operating safely and properly."

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied. Defendants admit only that Hylas offered to provide financing secured only by the Yacht itself.

31. Denied.

32. Denied.

33. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same.

34. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same.

35. Denied.  Defendants admit only that UCC financing statements were filed to protect T3's security interest in Hull # 7 following plaintiff's failure to do so in accordance with the terms of the Agreement.

36. Denied.  Defendants admit only that UCC financing statements were filed to protect T3's security interest in Hull # 7 following plaintiff's failure to do so in accordance with the terms of the Agreement.

37. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same.

38. Denied.

39. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same.

40. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same.

## Claims

## Count I:  Breach of Contract Against T3

41. T3 incorporates all of the responses to the preceding paragraphs as if fully set forth herein.

42. Denied.  Defendants admit only that the Agreement speaks for itself.

43. Denied.

44. Denied.

45. Denied.

## Count II:  Breach of the Covenant of Good Faith and Fair Dealing Against T3

46. T3 incorporates all of the responses to the preceding paragraphs as if fully set forth herein.

47. Denied.  Defendants admit only that the Agreement speaks for itself.

48. Denied.

49. Denied.

## Count III:  Promissory Estoppel Against All Defendants

50. Defendants incorporate all of the responses to the preceding paragraphs as if fully set forth herein.

51. Denied.

52. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same.

53. Denied.

54. Denied.

55. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same.

56. Denied.

57. Denied.

**<u>Count IV:  Quantum Meruit/Unjust Enrichment Against All Defendants</u>**

58. Defendants incorporate all of the responses to the preceding paragraphs as if fully set forth herein.

59. Denied.

60. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same.

61. Denied.

62. Denied.

63. Denied.

## Count V:  Fraud Against All Defendants

64. Defendants incorporate all of the responses to the preceding paragraphs as if fully set forth herein.

65. Denied.  Defendants admit only that the subject matter of any interest was the possible assignment or purchase of a contract from Fran Schwenk.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.  Defendants admit only that the Agreement speaks for itself.

71. Denied.  Defendants admit only that the Agreement speaks for itself.

72. Denied.  Defendants admit only that the Agreement speaks for itself.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

77. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same.

78. Denied.

79. Denied.

## Count VI:  Slander of Title Against All Defendants

80. Defendants incorporate all of the responses to the preceding paragraphs as if fully set forth herein.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

## Count VII:  Noncompliance with Article 9 of the UCC, M.G.L. 106, § 9-625 Against All Defendants

88. Defendants incorporate all of the responses to the preceding paragraphs as if fully set forth herein.

89. Denied.

90. The allegations in paragraph 90 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

91. The allegations in paragraph 91 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

92. The allegations in paragraph 92 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

93. The allegations in paragraph 93 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

94. The allegations in paragraph 94 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

95. The allegations in paragraph 95 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

96. Denied.

## Count VIII:  Intentional Interference with Advantageous Contractual Relationship Against All Defendants

97. Defendants incorporate all of the responses to the preceding paragraphs as if fully set forth herein.

98. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 98, and therefore neither admit nor deny said allegations, but call upon plaintiff to prove the same, except that T3 denies it had an obligation to purchase the yacht unless Hylas procured Hull financing and delivered the vessel fully commissioned to T3 at the delivery in completely sound condition "with all systems and equipment operating safely and properly."

99. Denied.

100. Denied.  Defendants admit only that UCC financing statements were filed to protect T3's security interest in Hull # 7 following plaintiff's failure to do so in accordance with the terms of the Agreement.

101. Denied.

## Count IX:  Civil Conspiracy/Joint Liability Against All Defendants

102. Defendants incorporate all of the responses to the preceding paragraphs as if fully set forth herein.

103. Denied.

104. Denied.

105. Denied.

## Count X:  Violation of M.G.L. c. 93A, §§ 2 and 11 Against All Defendants

106. Defendants incorporate all of the responses to the preceding paragraphs as if fully set forth herein.

107. The allegations in paragraph 107 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

108. The allegations in paragraph 108 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

109. The allegations in paragraph 109 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116. The allegations in paragraph 116 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

117. Denied.

118. Denied.

119. The allegations in paragraph 119 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

## Count XI:  Preliminary and Permanent Injunctive Relief Against All Defendants

120. Defendants incorporate all of the responses to the preceding paragraphs as if fully set forth herein.

121. Denied.

122. Denied.

123. Denied.

124. The allegations in paragraph 124 contain legal conclusions to which no response is required. To the extent that a response is required, defendants deny the allegations.

### Count XII:  Declaratory Judgment Against All Defendants

125. Defendants incorporate all of the responses to the preceding paragraphs as if fully set forth herein.

126. Denied.  The allegations in paragraph 126 contain prayers for relief (and no factual allegations) to which no response is required.

127. Denied.  The allegations in paragraph 127 contain prayers for relief (and no factual allegations) to which no response is required.

128. Denied.  The allegations in paragraph 128 contain prayers for relief (and no factual allegations) to which no response is required.

129.  Denied.  The allegations in paragraph 129 contain prayers for relief (and no factual allegations) to which no response is required.

### FIRST AFFIRMATIVE DEFENSE

The Verified Complaint fails to state any claims against Defendants upon which relief can be granted and must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b) (6).

### SECOND AFFIRMATIVE DEFENSE

T3 was not in default of the Agreement due to failure of the Hylas to procure 80% hull financing for the yacht or to present the Yacht to the Buyer at the <u>delivery</u> a fully commissioned yacht "in completely sound condition with all systems and equipment operating safely and

properly." On November 2, 2009, Plaintiff did not repudiate the Agreement but rather reaffirmed the Agreement and further promised to commission the yacht and obtain financing for T3, thereby inducing T3 and Strother to pay an additional $125,000. Consequently, since the Agreement was reaffirmed by Hylas and never repudiated, the Verified Complaint must be dismissed.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff is barred from cancelling the Agreement because Plaintiff reaffirmed the Agreement on November 2, 2009 and never set a Closing Date, nor did Plaintiff ever commission the yacht as Plaintiff promised, absconding with defendants' $125,000. Thus, with no Closing Date set or breached, the Verified Complaint must be dismissed.

### FOURTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred and must be dismissed under the Doctrine of Estoppel.

### FIFTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred and must be dismissed under the Doctrine of Waiver.

### SIXTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred and must be dismissed under the Doctrine of Laches.

### SEVENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred and must be dismissed under the Doctrine of Unclean Hands and Bad Faith.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and must be dismissed under the Doctrine of the Implied Covenant of Good Faith and Fair Dealing.

## NINTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred and must be dismissed due to its ratification.

## TENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred and must be dismissed due to its own prior material breach.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and must be dismissed in that it has named an improper party and/or failed to name a proper party.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and must be dismissed because of the absence of any documentation of liquidated damages and/or non-refundable deposit terms within the Sales Agreement.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and must be dismissed under the Doctrine of Offset.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and must be dismissed under the Doctrines of first-in-time and prior pending action.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Plaintiff's lawsuit should be transferred from the improper venue of the United States District Court in Massachusetts to the United States District Court for the Southern District of Florida because all or a substantial portion of the events that gave rise to Plaintiff's claims transpired in the Southern District of Florida, including the representations of Hylas, the signing of the Sales Agreement, and personal meetings between Plaintiffs and Hylas officers. In addition ten out of twelve key witnesses live in the Southern District of Florida. Hylas has filed an appearance in the concurrent Florida action and has such consented to jurisdiction in the Southern District of Florida.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and must be dismissed due to improper service.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and must be dismissed pursuant to the arbitration provision contained within the subject Sales Agreement. Eighteenth

## EIGHTEENTH AFFIRMATIVE DEFENSE

The allegations of violations of Mass. G.L. c. 93A § 2 are barred due to the failure by plaintiffs to satisfy one or more conditions precedent.

## COUNTERCLAIM

The Defendants/Plaintiffs-in-Counterclaim, Richard Strother and T3 Vistas, LLC for their Counterclaim against the Plaintiff, Hylas Yachts, LLC, state as follows:

## FACTS

1.      In spring of 2008, Hylas, which builds two 70 foot sailboats per year, had a problem in that the buyer for Hylas Twin Wheel 70 Hull # 6, Fran Schwenk.  He backed out of his Contract for Sale, leaving Hylas in a bind because Hylas had commitments at much higher prices for the 2 yachts to be built in 2010 and could not let this earlier contract out to public knowledge because it would ruin their price points and thus profits for new Hylas 70's. (The Fran Schwenk Contract is hereinafter referred to as the "Schwenk Contract").

2.      Defendants entered into negotiations with Fran Schwenk and Hylas to assume the Schwenk Contract. It required 20% down, and Hylas and its agents assured Strother that 80% financing at 6.50% on a 10-20 year amortization schedule, secured only by the Yacht itself, was readily available and they would virtually guarantee such financing.

3.      Defendants believed Hylas and Queen Long Shipyard in Taiwan, which manufactures the Hylas yachts, were substantive companies with large credit lines, and could provide the 80% financing through their own lenders.

4.      T3 made an agreement with Fran Schwenk to return $40,000 of his deposit in exchange for a release of Hylas and T3, and T3 made an offer to Hylas to assume the Schwenk Contract and pay the 20% down payment of $320,000.

5.      This offer was accepted by Hylas on July 26, 2008, because it would settle their problem by leaving their "2010 production in place which was a primary goal for finding a new buyer for the 2009 fall production slot."

6.      There were two other provisos: (i). That the pricing agreement remain confidential and "not made public to other owners or prospective buyers"; and  (ii) that Hull # 7 was the subject

of the Schwenk Contract since Hylas had rolled forward the subsequent purchaser into Hull # 6 at a higher price.

7.      Subsequently, the parties agreed that rather than assuming the Schwenk Contract, a new Sales Agreement would be made providing for the payment to Fran Schwenk and mutual releases.

8.      On August 1, 2008, Hylas drafted a new contract for Hull # 7 ("the Sales Agreement") for a base purchase price of $1,630,000.

9.      Hylas and/or its agents again represented that the remaining 80% of the purchase price of Hull # 7 would be readily available by means of a Preferred First Ship Mortgage to anyone with a FICO or Credit Score above 670, thus inducing T3 into executing the Sales Agreement.

10.     The Agreement was intentionally or negligently drafted by Hylas to include a flaw regarding the 80% due on Closing because Paragraph 3 thereof ( the "Payment Schedule")  3(c) required "the balance shall be paid upon <u>delivery</u> as provided in Paragraph 8."   While 3(d) provided "A final payment …shall be made at the Closing." Paragraph 5 provided that "Seller agrees… to present the Yacht to the Buyer at the <u>delivery</u> in completely sound condition with all systems and equipment operating safely and properly" requiring the delivery of a fully rigged and commissioned sailing yacht.  However, paragraph 8 ("The Delivery and Closing") appears to require a balance of payment due within one week of the yacht's safe delivery "to the chosen yard of commissioning."

11.     Moreover, the title of the Yacht could only be transferred to the Buyer when the boat was fully commissioned and registered as a vessel with the Coast Guard, so the ambiguity could only mean that the 80% was due at Closing, and on information and belief, Hylas conducted all its Closings in this fashion.

12.     Pursuant to the Sales Agreement, T3 paid to Hylas or its designees the amount of $326,000 (a sum equal to 20% of the purchase price of Hull # 7).

13.      Pursuant to paragraph 7 of the Sales Agreement, a security interest of $326,000 vested to Defendants upon payment. Pursuant to paragraph 7 thereof,

14.     Pursuant to the terms of the Sales Agreement Hylas obligated to file a UCC financing statement to secure Defendants' interest in Hull # 7, which Hylas negligently or intentionally failed to do.

15.     Between August 8, 2008 and November 2, 2009, Defendants installed $14,651 of electronic equipment into Hull # 7, and paid to Hylas an additional $9,793.39 for 2 Simpson Cobra Davits plus $314.16 in related import duties to be attached to Hull # 7 for dingy hauling.

16.     On or about late October, 2009, Hull # 7 was delivered from Taiwan to the East Coast of the USA. Not only was the arrival of Hull # 7 many months late so that the yacht could not be commissioned and make it to the 2009 Antigua Boat Show, but it also became apparent that the 80% Preferred First Ship Mortgage financing promised to Defendants was not available.

17.     Plaintiff did not deliver Hull # 7 to the designated boatyard for commission: CrackerBoy Marina in Palm Beach, Florida; but was shipped by Hylas to Riverbend Marina in Fort Lauderdale, Florida.

18.     On or about November 2, 2009, Hylas Yachts, Inc. through its officer Kyle Jachney amended the terms of the Sales Agreement and induced T3 to deposit an additional $125,000 representing that such sum would enable the commissioning of Hull # 7 as a completed sailing yacht which would enable said Hull # 7 to be listed on a multiple listing service available by internet to the world of Yacht Brokers and Yacht Buyers and thereby more easily sold at the highest possible price if T3 or Hylas could not procure the necessary financing.

18

19.     In order to induce such additional payments, Hylas represented that the $125,000 would be repaid upon sale of a fully rigged Hull # 7, and Plaintiff would recoup at least $100,000 of the original deposit.

20.     Hylas did not repudiate the agreement but rather reaffirmed it by its actions.

21.     Defendants relied on Hylas' promise and paid the additional $125,000, whereby Defendants claim an additional $125,000 security interest in Hull # 7 vested to Defendants. The amount was allegedly to be used, inter alia, to purchase on Defendants' behalf a Forespar Rig and Liesurefurl Boom, Navtec Rod Rigging, a Harken Hydraulic Commander System, and Selden Hydraulic Furlers.

22.     Contrary to the purpose of said additional $125,000 payment by Defendants, Hylas breached the agreement and never commissioned  Hull # 7 and furthermore never listed Hull # 7 on a multiple listing service available by internet to the world of Yacht Brokers and Yacht Buyers for over 2 years.

23.     Upon information and belief, Hylas did not commission  Hull # 7 and never listed Hull # 7 on a multiple listing service available by internet to the world of Yacht Brokers and Yacht Buyers for over 2 years because Hull # 7 had a base price of only $1,630,000 and Hylas had signed new contracts for Hull # 8 at a higher Base Price of $1,945,000; Hull # 9 at $1,995,000, Hull # 10 at $2,020,000, and was negotiating for Hull # 11 at a Base Price of $2,245,000.

24.     Upon information and belief, Hylas did not commission Hull # 7 and never listed Hull # 7 on a multiple listing service available by internet to the world of Yacht Brokers and Yacht Buyers for over 2 years because it wanted to protect its rising price points on the New Hylas 70's and the listing and sale of a fully commissioned Hylas Hull # 7 would hurt Hylas' rising price points and possibly lose a sale of Hull #'s 11, 12 and/or 13 at the much higher prices they were

negotiating.

25.     Upon information and belief, they deceived Defendants in order to keep the extra inventory of the Hylas Twin Wheel Hull # 7 off the market and unknown to the Yacht Brokerage community for over 2 years after promising Defendants they would rig and commission Hull # 7.

26.     On or about February, 2012 Defendants learned that Hull # 7 had been rigged and was to be "quietly" sold at a steep discount to the new Hylas 70's, with no notice to Defendants, who were entitled to be lien holders.

27.     Defendants also learned that Hull # 7 had been stripped for parts for other Hylas boats and was sold as an "as is" condition at a very low price.

28.     Upon information and belief, Hylas had absconded with the $125,000 T3 had paid in November, 2009, and used the new buyer's down payment to commission Hull # 7.

## Count I- Breach of Contract

### (As to T3 and Hylas)

29.     Defendants/Plaintiffs-in-Counterclaim incorporate the allegations of the preceding paragraphs as if set forth at length herein.

30.     Hylas failed to present the Yacht to the T3 at the delivery in completely sound condition with all systems and equipment operating safely and properly and to deliver to T3 a UCC Statement or Security Interest in Hull #7  in breach of paragraph 7 of the Sales Agreement.

31.     Hylas failed to provide 80% financing by means of a Preferred Ship Mortgage in breach of its agreement to do so.

32.     Hylas failed to Rig Hull # 7 with T3's additional $125,000 and place it on a Multiple Listing Service (for over 2 years) for Yacht Brokers for the highest possible price, in breach of their agreement to do so.

33.     As a result, T3 was injured and has suffered damages.

WHEREFORE, T3 hereby demands judgment by this Court against Hylas in an amount which is adequate to compensate it for its damages together with interest, costs and reasonable attorney's fees.

### Count II-Promissory Estoppel / Detrimental Reliance

(As to T3 and Hylas)

34.     Defendants/Plaintiffs-in-Counterclaim incorporate the allegations of the preceding paragraphs as if set forth at length herein.

35.     Hylas made false representations to induce T3 to pay enter into the Agreement and deposit $326,000 towards the purchase of Hull # 7 as well as another $125,000 towards the rigging and commissioning of Hull # 7, knowing such representations were false.

36.     T3 relied on those representations.

37.     As a result, T3 was injured and has suffered damages.

WHEREFORE, T3 hereby demands judgment by this Court against Hylas in an amount which is adequate to compensate it for its damages together with interest, costs and reasonable attorney's fees.

### Count III-Violation of Mass. Gen. L. 93A

(As to T3 and Hylas)

38.     Defendants/Plaintiffs-in-Counterclaim incorporate the allegations of the preceding paragraphs as if set forth at length herein.

39.     At all relevant times, Hylas engaged in trade or commerce within the meaning of Mass. Gen. L. 93A, § 1(b).

40.     Hylas' conduct constituted a violation of the Massachusetts Consumer Protection Act, Mass. Gen. L. 93A, causing T3 substantial loss and injury in excess of $469,758.55.

41.     Hylas' violations of the Massachusetts Consumer Protection Act, Mass. Gen. L. 93A,

were willful and/or knowing violations of said statute, entitling T3 to the recovery of multiple

damages pursuant to Mass. Gen. L. 93A, § 11.

42.     As a direct and proximate result of Hylas' unfair and deceptive acts and practices and

violations of Mass. Gen. L. 93A, T3 has been seriously injured and significantly damaged,

suffering , without limitation, direct, incidental and consequential damages, as well as attorney's

fees and costs.

        WHEREFORE, T3 hereby demands judgment by this Court against Hylas in an amount

which is adequate to compensate it for its damages together with interest, costs and reasonable

attorney's fees.

### Count IV-Breach of Covenant of Good Faith and Fair Dealing

(As to T3 and Hylas)

43.     Defendants/Plaintiffs-in-Counterclaim  incorporate  the  allegations  of  the  preceding

paragraphs as if set forth at length herein.

44.     Hylas failed to present the Yacht to the T3 at the delivery in completely sound condition

with  all  systems  and  equipment  operating  safely  and  properly  and  to  deliver  to  T3  a  UCC

Statement or Security Interest in Hull #7 in breach of paragraph 7 of the Sales Agreement.

45.     Hylas failed to provide 80% financing by means of a Preferred Ship Mortgage in breach

of its agreement to do so.

46.     Hylas failed to Rig Hull # 7 with T3's additional $125,000 and place it on a Multiple

Listing Service (for over 2 years) for Yacht Brokers for the highest possible price, in breach of

their agreement to do so.

47.     Hylas defrauded T3 of $469,758.55 in monies paid towards Hull # 7, and attempted to

defeat T3's security interest in Hull # 7.

48.     As a result, T3 was injured and has suffered damages.

WHEREFORE, T3 hereby demands judgment by this Court against Hylas in an amount which is adequate to compensate it for its damages together with interest, costs and reasonable attorney's fees.

## Count V-Fraud in the Inducement

(As to T3 and Hylas)

49.     Defendants/Plaintiffs-in-Counterclaim incorporate the allegations of the preceding paragraphs as if set forth at length herein.

50.     Hylas fraudulently induced T3 to enter into agreements in order to deprive T3 of $469,758.55 in monies paid towards Hull # 7.

51.     Hylas fraudulently attempted to defeat T3's security interest in Hull # 7 pursuant to the Sales Agreement.

52.     As a result, T3 was injured and has suffered damages.

WHEREFORE, T3 hereby demands judgment by this Court against Hylas in an amount which is adequate to compensate it for its damages together with interest, costs and reasonable attorney's fees.

## Count VI-Conversion

(As to T3, Strother and Hylas)

53.     Defendants/Plaintiffs-in-Counterclaim incorporate the allegations of the preceding paragraphs as if set forth at length herein.

54.  Hylas did convert property, equipment, appurtenances and monies belonging to T-3 for its own use.

55.     As a result, T3 and Strother were injured and have suffered damages.

WHEREFORE, T3 and Strother hereby demand judgment by this Court against Hylas in

an amount which is adequate to compensate it for its damages together with interest, costs and reasonable attorney's fees.

### Count VII-Misrepresentation

(As to T3, Strother and Hylas)

56.      Defendants/Plaintiffs-in-Counterclaim incorporate the allegations of the preceding paragraphs as if set forth at length herein.

57.      Hylas did make false representations to induce T3 and Strother to deposit $326,000 towards the purchase of Hull # 7 as well as another $125,000 towards the rigging and commissioning of Hull # 7, knowing such representations were false.

58.      Hylas made these false representations negligently or intentionally.

59.      T3 and Strother relied on those representations.

60.      As a result, T3 and Strother were injured and have suffered damages.

WHEREFORE, T3 and Strother hereby demand judgment by this Court against Hylas in an amount which is adequate to compensate it for its damages together with interest, costs and reasonable attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Defendants/Plaintiffs-in-Counterclaim pray that this Court:

1.   Award money damages in an amount determined at trial, in excess of $469,758.55, exclusive of interest, punitive dmages and treble damages pursuant to Mass. Gen. L. 93A, § 11;

2.   Award multiple, consequential, and punitive damages;

3.   Award interest;

4.   Award reasonable attorney's fees and costs; and,

5.   Order such other relief as this Court may deem just and proper.

24

## JURY DEMAND

Defendants request trial by jury on all Counts.

Respectfully submitted,

T3 VISTAS, LLC and
RICHARD STROTHER
By their counsel,

May 17, 2012

/s/ Patrick O. McAleer
Patrick O. McAleer, BBO #642627
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, MA 02110
Tel: (617) 951-2800
Fax: (617) 951-2819
E-Mail: pmcaleer@lgllp.com

## CERTIFICATE OF SERVICE

I, Patrick O. McAleer, Esq. hereby certify on this 17th day of May, 2012, that I filed the foregoing on the CM/ECF system, which will provide notice to all counsel of record.

/s/ Patrick O. McAleer
Patrick O. McAleer

4832-4507-0351, v. 1