UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHSUETTS

| | |
|---|---|
| HYLAS YACHTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> T3 VISTAS, LLC; RICHARD STROTHER; <br><br> Defendants | Docket Number <br><br> 1:12-cv-10468 DJC |

## FIRST AMENDED COMPLAINT

Now comes Hylas Yachts, Inc. and hereby submits its First Amended Complaint by leave of Court previously granted to file such amended complaint by May 6, 2013.

## Parties

1. The Plaintiff, Hylas Yachts, Inc. ("Hylas"), is a duly organized Massachusetts corporation with its principal place of business at 2 Market Square, Marblehead, Massachusetts.

2. The Defendant, T3 Vistas, LLC ("T3"), is a Florida Limited Liability Company with a principal place of business at 340 Royal Poinciana Way, #317-203, Palm Beach, Florida, 33480.

3. The Defendant, Richard Strother ("Strother"), is a natural individual with a principal place of business at 340 Royal Poinciana Way, #317-203, Palm Beach, Florida, 33480.

## Jurisdiction and Venue

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) on the basis of diversity of the parties.

5. Jurisdiction is also proper in accordance with G.L. c223A, the Massachusetts Long Arm Statute.

6. The amount in controversy in this matter exceeds $75,000.00.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and the Local Rules of the United States District Court for the District of Massachusetts.

8. The events and occurrences that give rise to this cause of action have occurred here in the Commonwealth of Massachusetts.

9. The Agreement between the parties that gives rise to this dispute provides that the law of the Commonwealth of Massachusetts shall apply.

10. Moreover, the Defendants have filed two UCC-1 Financing statements here in the Commonwealth of Massachusetts and have thus consented to the jurisdiction of the Courts of the Commonwealth of Massachusetts.

## Facts

11. In or around the spring and summer of 2008, Richard Strother showed an interest in the purchase of a custom-built yacht form Hylas.

12. Strother represented to Hylas that he had sufficient assets, resources, credit and funds to purchase the yacht at a price that was agreed upon in the amount of $1,630,000 plus an additional $225,000 for customized additions to the base contract for a total of approximately $1,855,000 purchase price.

13. Strother indicated and represented to Hylas (which was a fundamental fact upon which Hylas relied), that prior to entering into an Agreement with Hylas, Strother had sufficient resources and assets for the purchase of the yacht and, further, that T3 would be created as a limited liability company for the purchase of the yacht and for title to be transferred.

14. At all times prior to the execution f the Agreement, however, Strother was the real party in interest and the real purchaser whose resources would be available for the purchase of the Yacht.

15. Strother represented that the yacht would be used for a commercial charter venture and that the yacht would have a crew and captain that would be hired for the purpose of commercial charter.

16. Strother further stated that he would either invest his own requisite funds into T3 or pay Hylas directly for the purchase of the yacht.

17. After the Yacht was purchased, Strother was going to place title to the Yacht into a limited liability company that otherwise had no assets or resources other than what would be funded into it directly or paid directly to Hylas for the purchase of the Yacht.

18. Hylas relied upon these representations in determining that it would enter into an agreement to build and sell to Strother and/or his limited liability company the custom built yacht which the Defendants commissioned Hylas to build.

19. On August 1, 2008, Hylas and T3 entered into an agreement ("the Agreement") purchasing a custom built yacht from Hylas ("the yacht") for approximately $1,885,000.

20. Strother signed the Agreement on behalf of T3.

21. The Agreement provided to T3 a security interest in the yacht to the extent that the Purchaser would advance the deposit amount of $326,000 while the yacht was being built.

22. The Agreement also provided that the security interest would extinguish upon transfer and delivery of the yacht to T3.

23. The Defendants, including Strother individually, made certain payments directly to Hylas which payments include two payments of $163,000 (a total of $326,000) as a deposit for the yacht.

24. The Agreement provided that upon delivery of the yacht to the designated boatyard for commission in Fort Lauderdale, the balance of the purchase price was then due in full.

25. In November 2009, Hylas delivered the yacht to the Defendants in Fort Lauderdale, Florida, close to the residence of the Defendant Strother.

26. The Yacht was delivered in accordance with the terms of the Agreement.

27. Upon delivery of the yacht, however, T3 and Strother only made additional payments totaling $125,000.

28. T3 and Strother failed to pay the balance of the purchase price that was due when the boat was delivered in November 2009 in accordance with the terms of the Agreement.

29. After November 2009, T3 and Strother failed to make any additional payments for the yacht and defaulted under the terms of the Agreement.

30. The Defendant Strother breached the Agreement with Hylas Yachts for the purchase of the custom built yacht.

31. Notwithstanding, Strother repeatedly stated that he still wanted to go forward with the purchase of the Yacht and that he would make the then balance of payments outstanding.

32. Hylas, under reservation of its rights, indicated immediately after the breach that if Strother and T3 could cure the breach and promptly make payment, Hylas would accept the payment, conduct a closing, and accept payment and transfer title.

33. Strother, after the default and his breach of the Agreement, indicated that he would seek financing to purchase the Yacht.

34. In addition, Hylas, in an attempt to sell the Yacht and to mitigate its damages, offered to assist Strother to obtain financing after Strother defaulted on the Agreement.

35. Strother failed to obtain any financing, failed to complete the transaction and remains in default on the agreement.

36. Ultimately, in or about 2011, T3 and Strother informed Hylas that he would not purchase the yacht nor would the limited liability company purchase the yacht.

37. Hylas has worked to sell the yacht to prospective buyers in order to mitigate its damages.

38. On or about December 2011, Hylas entered into an agreement with a third party for the sale of the yacht.

39. Strother and T-3, knowing full well that they had no right under the terms of the Agreement to do so, nonetheless filed a UCC-1 Financing Statement to interfere with the sale of the Yacht to a third party by Hylas.

40. On or about February 17, 2012, the Defendant T-3 filed a UCC statement ("UCC-1") with the Massachusetts Secretary of State, UCC Filing Number 201293903030.

41. On or about March 7, 2012, the Defendants amended UCC-1 ("UCC-3") with the Massachusetts Secretary of State, UCC Filing Number 201294284750 to add Richard Strother a the benefited party under the terms of the Agreement and the holder of the Security Interest.

42. As a result of the filing of the UCC-1 and UCC-3 and the resulting cloud on Hylas' title to the yacht, Hylas has been unable to complete its sale of the yacht as of the date of the filing of the original complaint.

43. In addition to the creation of a lien on the title, the Defendants have stated that they would seek to seize the yacht if the yacht title is transferred to the new Buyer.

44. As a consequence of these threats, the new Buyer is, predictably, very concerned about the status of title and the ability of Hylas to deliver the yacht to the new Buyer as of the date of the filing of the original complaint.

45. In addition, the new Buyer had indicated that he may not go through with the purchase of the yacht and will seek to enforce his rights against Hylas for breach of the sale of the yacht to the new Buyer.

46. In addition, Defendant Rick Strother individually and on behalf of T-3 sent to Hylas a number of emails threatening to report Hylas to certain taxing authorities and the customs authorities, claiming that Hylas was involved in certain illegal or otherwise wrongful, activities in the event that Hylas did not settle the litigation with Strother and t-3 on terms favorable to Strother and T-3.

47. Strother individually and on behalf of T-3 also stated that they would create a website on order to disseminate information about Hylas that would be used to gain an unfair and wrongful advantage over Hylas and force Hylas to settle the civil litigation on terms favorable to Strother and T-3;

48. These threats are intended to coerce and extort the Plaintiff into a settlement that it would not otherwise engage in and constitute unlawful means to achieve such a settlement;

## **Claims**

### **Count I: Breach of Contract**
### **Against T3**

49. Hylas realleges all preceding paragraphs.

50. On August 1, 2008, Hylas and T3 entered into an agreement ("the Agreement") purchasing a custom yacht from Hylas ("the yacht") for $1.63 million plus certain additional monies for the installation of certain customized equipment and components.

51. Hylas performed pursuant to the Agreement.

52. Neither T3 nor Strother has made full payment for the yacht and thereby breached the Agreement.

53. As a result of the breach, Hylas was injured and has suffered damages.

### Count II: Breach of the Covenant of Good Faith and Fair Dealing
### Against T3

54. Hylas realleges all preceding paragraphs.

55. On August 1, 2008, Hylas and T3 entered into an agreement ("the Agreement") purchasing a custom yacht from Hylas ("the yacht") for $1.63 million plus certain additional monies for the installation of certain customized equipment and components.

56. Both T-3 and Strother however have made payments for the purchase of the Yacht and have sought benefits under the Agreement with Hylas. .

57. T3 and Strother have failed to make full payment for the yacht and thereby deprived Hylas of the benefit of its Agreement with T3 and Strother.

58. As a result of T3's actions, Hylas has been injured.

### Count III: Promissory Estoppel
### Against All Defendants

59. Hylas realleges all preceding paragraphs.

60. Strother and T3 represented that it would purchase a custom yacht from Hylas for $1,885,000.

61. Hylas relied upon this representation in building to Strother and T3's specifications and delivering the yacht to T3.

62. The failure by both T3 and Strother individually to make full payment for the yacht has thereby harmed Hylas.

63. It would be inequitable for Strother and T3 to fail to fulfill the promise with Hylas.

64. Hylas expected payment for the yacht by Strother and/or T3.

65. Clearly, Strother and T3 understood that Hylas was entitled to payment.

66. As a result, Hylas has been damaged.

### Count IV: Quantum Meruit/Unjust Enrichment
### Against All Defendants

67. Hylas realleges all preceding paragraphs.

68. Hylas provided services to T3 and Strother by building a yacht to T3's specifications.

69. Hylas rendered those services with the reasonable expectation of being paid by T3 and/or Strother.

70. T3, having reason to believe that the plaintiff was acting with the expectation of being paid, permitted it to act without objection.

71. It would be inequitable for T3 and/or Strother to retain the benefit conferred on it by Hylas of the right to purchase the Yacht without following through and fulfilling the terms of the Agreement.

72. As a result, Hylas has been damaged.

### Count V: Fraud
### Against All Defendants

73. Hylas realleges all preceding paragraphs.

74. On or around the spring and summer of 2008, Richard Strother showed an interest in the purchase of a custom built yacht form Hylas.

75. Strother represented to Hylas that he had sufficient assets, resources, credit and funds to purchase the yacht at a price that was agreed upon in the amount of $1,885,000.

76. Strother indicated and represented to Hylas which representation became a fundamental fact upon which Hylas relied, that Strother was the financing source for the purchase of the yacht and, further, that T3 would be created as a limited liability company for the sole and limited purpose of taking title of the yacht and for title to be transferred.

77. Strother further stated that he would either invest the requisite funds into T3 or pay Hylas directly for the purchase of the yacht.

78. Hylas understood that Strother was the real party in interest and had the resources and assets in his own name individually; T-3 only had whatever resources that Strother would advance to it for the purpose of purchasing the Yacht.

79. At all times germane prior to the execution of the Agreement, Strother made clear to Hylas that Strother has sufficient resources in his own name to fund the full purchase of the Yacht without any bank financing and did not intend to seek any financing to purchase the Yacht.

80. Hylas relied upon these representations in determining that it would enter into an agreement to build and sell to Strother and/or his limited liability company the custom built yacht which the Defendants commissioned Hylas to build.

81. On August 1, 2008, Hylas and T3 entered into an agreement ("the Agreement") purchasing a custom built yacht from Hylas ("the yacht") for $1,885,000.

82. Strother signed the Agreement on behalf of T3.

83. On August 1, 2008, Hylas and T3 entered into an agreement ("the Agreement") purchasing a custom yacht from Hylas ("the yacht") for $1,885,000.

84. Many of the partial payments came from Strother's own personal accounts and not from any account of T-3.

85. After the delivery of the yacht, Strother made additional payments in accordance with the Agreement only in the amount of $125,000.

86. After November 2009, T3 and Strother failed to make any additional payments for the yacht.

87. T3 and Strother repeatedly represented to Hylas in E-mail and verbal communications through its agent Strother that it would make the outstanding payments both prior to the execution of the sales agreement and immediately and shortly after the Defendants defaulted.

88. T3 and Strother knew when it made those representations that T3 and Strother did not intend to purchase the yacht from Strother's own resources.

89. Hylas repeatedly and reasonably relied on Strother and T3's representations regarding its willingness and ability to pay for the yacht.

90. Upon information and belief, T3 and Strother were and continue to be able to pay and/or obtain financing for the outstanding purchase price for the yacht but have refused to do so.

91. Hylas reasonably and justifiably relied on these promises and representations from Strother and from Strother on behalf of T-3.

92. As a result of its misrepresentations, Hylas has been injured.

### Count VI: Slander of Title
### Against All Defendants

93. Hylas realleges all preceding paragraphs.

94. The defendants have wrongfully recorded UCC-1 and UCC-3 Financing Statements in violation of the law and the Agreement with Hylas.

95. The Defendants communicated to third parties via the UCC-1 and UCC-3 that there was a defect in Hylas' title to the yacht.

96. The statements made by the Defendants in the UCC-1 and UCC-3 pertaining to the defect in the yacht's title are false.

97. The statements made by the Defendants in the UCC-1 and UCC-3 pertaining to the defect in the yacht's title are derogatory to Hylas' title.

98. The purpose the recent filing of the UCC-1 and UCC-3 Financing Statement was to knowingly and intentionally interfere with the sale of the yacht to a third party.

99. The Defendants filed the UCC-1 and UCC-3 statements with malice and intent to harm the Plaintiff.

100. As a result of filing the UCC-1 and UCC-3 statements, Hylas has been damaged, including but not limited to attorney's fees and costs associated with clearing its title.

### Count VII: Noncompliance with Article 9 of the UCC, M.G.L. c. 106, § 9-625
### Against All Defendants

101. Hylas realleges all preceding paragraphs.

102. The Defendants have filed the UCC-1 and UCC-3, both of which contain false statements about the Defendants' title to the yacht.

103. Hylas is entitled to all of the relief afforded by those applicable provisions of G.L. c106 § 9-625, including but not limited to the right of discharge of the wrongful financing Statement, statutory damages and all other damages.

104. As a result of the Defendants' actions, Hylas has experienced losses as defined in M.G.L. c. 106, § 9-625(b).

105. Hylas is a person entitled to recover damages under M.G.L. c. 106, § 9-625.

106. Hylas may therefore be compensated for its losses as defined in M.G.L. c. 106, § 9-625(b) from the Defendants.

107. Pursuant to M.G.L. c. 106, § 9-625(e)(3), as a penalty for filing false UCC statements, Hylas is entitled to an award of $500.00 from the Defendants.

108. Hylas is entitled to the remedies provided by G.L. c106 § 9-625(a).

109. As a result, Hylas has been damaged.

### Count VIII: Intentional Interference with Advantageous Contractual Relationship
### Against All Defendants

110. Hylas realleges all preceding paragraphs.

111. Hylas is contracted to sell to a third party the yacht that the Defendants have failed to purchase (despite their obligation to do so).

112. The Defendants knew that Hylas was entering an agreement to sell the yacht with the third party.

113. Without any justification or rights to the yacht, the Defendants filed the UCC-1 and UCC-3 in order to interfere with the sale of the yacht.

114. As a result of filing the UCC-1 and UCC-3 statements, Hylas has been damaged, including but not limited to attorney's fees and costs associated with clearing its title.

### Count IX: Civil Conspiracy/Joint Liability
### Against All Defendants

115. Hylas realleges all preceding paragraphs.

116. The Defendants entered into an agreement to interfere with or Hylas' right or to deprive Hylas of its right to sell the yacht by filing the UCC-1 and UCC-3.

117. The Defendants harmed Hylas by filing the UCC-1 and UCC-3.

118. The Defendants should therefore be held jointly and severally liable for any and all resulting damages to Hylas.

### Count X: Violation of M.G.L. c. 93A, §§ 2 and 11
### Against All Defendants

119. Hylas realleges all preceding paragraphs.

120. Plaintiff Hylas is engaged in trade or commerce within the meaning of G.L. c93A sections 2 and 11.

121. The Defendants are engaged in trade or commerce within the meaning of G.L. c93A sections 2 and 11.

122. The Defendants have committed unfair or deceptive acts or practices against Hylas in violation of c 93A, including, but not limited to, the numerous false statements made to induce Hylas to enter into an agreement to custom build the yacht; to deliver the boat to the Defendants; to attempt to assist the Defendants in obtaining financing after the default; to seek to mitigate the damages of the Defendants and then, upon successfully obtaining a Purchaser, to suffer a wrongful lien recordation in violation of the sales Agreement and the law of the Commonwealth of Massachusetts.

123. The Defendants communicated to third parties via the UCC-1 and UCC-3 that there was a lien on Hylas' title to the yacht.

124. The statements made by the Defendants in the UCC-1 and UCC-3 pertaining to the defect in the yacht's title are false.

125. The statements made by the Defendants in the UCC-1 and UCC-3 pertaining to the defect in the yacht's title are derogatory to Hylas' title.

126. The Defendants filed the UCC-1 and UCC-3 statements willfully and knowingly intending to harm Hylas.

127. As a result of filing the UCC-1 and UCC-3 statements, Hylas has been damaged, including but not limited to attorney's fees and costs associated with clearing its title.

128. In addition, the Defendants have state that they intend to arrest the boat if it purchased by a third party and put into service and use on the waterways.

129. In addition, Defendant Rick Strother individually and on behalf of T-3 sent to Hylas a number of emails threatening to report Hylas to certain taxing authorities and the customs authorities, claiming that Hylas was involved in certain illegal or otherwise wrongful, activities in the event that Hylas did not settle the litigation with Strother and t-3 on terms favorable to Strother and T-3.

130. Strother individually and on behalf of T-3 also stated that they would create a website on order to disseminate information about Hylas that would be used to gain an unfair and wrongful advantage over Hylas and force Hylas to settle the civil litigation on terms favorable to Strother and T-3.

131. Such statements, acts and practices constitute unfair and deceptive acts and practices which are a violation of G. L. c 93A sections 2 and 11.

132. Such acts and practices are knowing and intentional violation of G.L. c93A sections 2 and 11.

133. As a result, Plaintiff Hylas has been damaged.

134. Hylas is entitled to not less than two times nor more than three times actual damages, court costs, attorney's fees and interest.

### Count XI: Preliminary and Permanent Injunctive Relief
### Against All Defendants

135. Hylas realleges all preceding paragraphs.

136. There is a substantial and high likelihood that Hylas will succeed on the merits of its complaint herein and the Court will find that the Defendants have no security interest in the yacht.

137. There is a high likelihood that Hylas will demonstrate that the Defendants have no right to interfere with the sale of the Yacht to a third party and that there exists no right of the Defendants to take any steps to arrest the yacht or to otherwise interfere with the use and enjoyment of the Yacht by a third party Buyer.

138. There is a high likelihood of irreparable harm if Hylas continues to be unable to sell the yacht and mitigate its damages.

139. Hylas is therefore entitled to injunctive relief, including an order pursuant to G.L. c106 § 9-625(a) to discharge the existing UCC-1 and 3 Financing statements, an order enjoining the Defendants from threatening interfering or otherwise impeding the ability of Hylas to sell the yacht to the new buyer.

### Count XII: Declaratory Judgment
### Against All Defendants

140. Hylas realleges all preceding paragraphs.

141. Hylas requests that this Court find that the Defendants have no security interest to the yacht.

142. Hylas requests that this Court find that the Defendants were without any right to file the UCC-1 or the UCC-3.

143. Hylas requests that this Court find that the Defendants were without any right to send certain emails to Hylas threatening to file certain complaints and to take action against Hylas with State taxing authorities and the U.S. Customs in order to gain an unfair advantage in the civil action pending against the Defendants.

144. Hylas seeks a determination that the Defendants have no interest in and to the Yacht and have no right to arrest the yacht or otherwise interfere with the use, and enjoyment of the Yacht by a third party Purchaser.

145. Hylas further seeks declaratory relief as to all of the rights, liabilities and obligations of the parties.

### Count XXIIIV: PIERCING THE CORPORATE VEIL
### Against T3 AND HOLDING STROTHER INDIVIDUALLY LIABLE FOR ALL CLAIMS FOR WHICH T-3 IS FOUND LIABLE

146. Hylas realleges all preceding paragraphs.

147. The Agreement was entered into by T-3 and Hylas but, notwithstanding, Strother is the real party in interest for which this Honorable Court should find liable on all counts;

148. The Defendants have failed to adhere to any type of corporate governance, independence or formality;

149. The Defendants have failed to recognize the true, independent nature and existence of T-3 as a separate, recognized and functioning corporate entity in the form of a limited liability company;

150. The defendants have intermingled the personal assets of the Strother with the assets and resources of T-3;

151. The defendants have intermingled the personal expenses of the Strother with the expenses of T-3;

152. The Defendants have failed to maintain any independence required to correctly manage the affairs of T-3 and to provide it with the necessary legitimate third party existence for the Courts to recognize it as a true third party independent limited liability company separate and distinct form Strother individually;

153. The Defendants have failed to file any proper tax returns or to otherwise engage in any corporate activities and to maintain proper corporate records;

154. The defendants have failed to conduct any meetings, votes, member meetings, elect officers, or engage in any of the requisite type of corporate record keeping and corporate record maintenance required under the law;

155. Thee defendants have failed to adequately capitalize T-3 to meet its intended obligations and have only funding such company on an ongoing basis in amounts that are much lower than was required to manage its own corporate affairs;

156. The Defendants have intermingled the obligations of the Defendant T-3. In some instances Strother individually paid for the expenses and obligations of T-3 from his own personal resources;

157. This Honorable Court should thus set aside the corporate formality of T-3 and to pierce the corporate veil and to hold Strother individually liable for all of the debts and judgments of T-3 determined in this lawsuit.

## **Request for Relief**

Hylas therefore requests the following relief:

1. Enter a judgment for Hylas on all of its claims against all defendants;

2. Determine the rights and liabilities of the parties in the form of a declaratory judgment against all defendants;

3. Enter an order for Hylas that the Defendants have no interest in and to the Yacht and have no right to arrest the yacht or otherwise interfere with the use, and enjoyment of the Yacht by a third party Purchaser;

4. Enter an Preliminary and Permanent Injunction determining and enjoining the Defendants that the Defendants have no right to interfere with the sale of the Yacht to a third

party and that there exists no right of the Defendants to take any steps to arrest the yacht or to otherwise interfere with the use and enjoyment of the Yacht by a third party Buyer.

5. Award Hylas damages on all of its counts against all defendants;

6. Award Hylas attorney's fees, court costs and other damages against all defendants on all counts;

7. Award Hylas statutory damages pursuant to M.G.L. c. 106, § 9-625(e)(3);

8. Award Hylas damages for all losses pursuant to M.G.L. c. 106, § 9-625(a), (b), and (c);

9. Award Hylas damages pursuant to M.G.L. c. 93A, §§ 2 and 11;

10. Double or Treble any award to Hylas pursuant to M.G.L. c. 93A, §§ 2 and 11;

11. Award Hylas costs and attorneys' fees;

12. Enter a preliminary and permanent injunction pursuant to Mass. R. Civ. P. 65 and M.G.L. c. 106, § 9-625(a), ordering the Defendants to terminate and withdraw any and all UCC statements filed against Hylas, including but not limited to Massachusetts Filing Numbers 201293903030 and 201294284750 and not to refile the same;

13. Enter a preliminary and permanent injunction Mass. R. Civ. P. 65 and M.G.L. c. 106, § 9-625(a), enjoining the Defendants from filing additional UCC statements against Hylas or otherwise interfering in its sale of the yacht to any third-party buyer; and

14. Enter a preliminary and permanent injunction Mass. R. Civ. P. 65 and M.G.L. c. 106, § 9-625(a), enjoining and preventing the Defendants from interfering with or arresting the yacht after the sale of the Yacht to a third party;

15. Enter a preliminary and permanent injunction Mass. R. Civ. P. 65, enjoining and preventing the Defendants from threatening, communicating, or otherwise engaging in wrongful,

tortuous statements to any third parties concerning the conduct and /or business practices of Hylas, including but not limited to any taxing authorities o, prospective buyers, existing owners, or any other such third persons;

16. Enter the appropriate relief against both Defendants by ignoring the corporate formality of a limited liability company and to pierce the corporate veil and to hold Strother and T-3 jointly and severally liable for the full amount of damages determined to be due to Hylas in this litigation; and

17. Enter any other relief that this Court deems just and proper.

## **Jury Demand**

Hylas Demands a jury trial on all issues so triable.

Respectfully submitted,

HYLAS YACHTS, INC.,

By its attorneys,

/s/ Jeffrey S. Baker
Jeffrey S. Baker
BAKER & ASSOCIATES, P.C.
Two West Hill Place, Suite 100
Boston, MA 02114
(617) 357-9505
E-mail: bakerlaw@aol.com
BBO No. 544929

and

/s/ Patrick M. Groulx
Patrick M. Groulx
POLIS LEGAL
P.O. Box 45504
Somerville, MA 02145
(978) 549-3124
E-mail: pgroulx@polislegal.com
BBO No. 673394