UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HYLAS YACHTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> T3 VISTAS, LLC, and RICHARD STROTHER, <br><br> Defendants | Docket Number <br><br> 1:12-cv-10468 |

**MOTION OF THE PLAINTIFF TO MODIFY THE PRELIMINARY INJUNCTION TO REMOVE THE BOND**

NOW COMES the Plaintiff and requests that this Honorable Court modify the preliminary injunction of April 30, 2013, to remove the $125,000 bond filed by the Plaintiff. The evidence as developed to date bolsters the likelihood that Hylas will succeed on the merits of its claims. Further, Hylas's ability to conduct business has been hampered as a result of the bond. In support of this motion, Hylas states as follows.

**Facts**

**I.  Facts giving rise to the original preliminary injunction.**

The facts are essentially the same as in the Plaintiff's motion for a preliminary injunction filed on March 13, 2013. The facts are supported by the Affidavit of Kyle Jachney, and are restated here for convenience. See Aff. Jachney (Mar. 9, 2012).

In or around the spring and summer of 2008, Richard Strother ("Strother") showed an interest in the purchase of a custom-built yacht form Hylas. Strother represented to Hylas that he had sufficient assets, resources, credit and funds to purchase the yacht at a price that was agreed upon in the amount of $1,885,000. Strother indicated and represented to Hylas (which was a fundamental fact upon which Hylas relied), that Strother was the financing source for the

1

purchase of the yacht and, further, that T3 Vistas, LLC ("T3"), would be created as a limited liability company for the purchase of the yacht and to hold title. On August 1, 2008, Hylas and T3 entered into an agreement ("the Agreement") purchasing a custom built yacht from Hylas ("the yacht") for $1,885,000. Strother signed the Agreement on behalf of T3.

Strother represented that the yacht would be used for a commercial charter venture and that the yacht would have a crew and captain that would be hired for the purpose of commercial charter. Strother further stated that he would either invest the requisite funds into T3 or pay Hylas directly for the purchase of the yacht.

Hylas relied upon these representations in determining that it would enter into an agreement to build and sell to Strother and/or his limited liability company the custom built yacht which the Defendants commissioned Hylas to build. The Agreement provided to T3 a security interest in the yacht to the extent that the Purchaser would advance the deposit amount of $326,000 while the yacht was being built. The Agreement also provided that the security interest would extinguish upon transfer and delivery of the yacht to T3.

In 2009, the Defendants made two payments of $163,000 (a total of $326,000) as a deposit for the yacht. The Agreement provided that upon delivery of the yacht to the designated boatyard for commission, the balance of the purchase price was then due in full. In November 2009, Hylas delivered the yacht to the boatyard in Fort Lauderdale, Florida, close to the residence of the Defendant Strother.

Upon delivery of the yacht, however, T3 and Strother defaulted on payment of the balance of the purchase price of approximately $1,560,000. Instead, they only made additional payments totaling $125,000. T3 and Strother failed to pay the balance of the purchase price,

which was due when the boat was delivered in November 2009. After November 2009, T3 and Strother failed to make any additional payments for the yacht.

The Defendant Strother breached the Agreement with Hylas Yachts for the purchase of the custom built yacht. Notwithstanding, T3 repeatedly represented to Hylas in E-mail and verbal communications through its agent Strother that it would make the outstanding payments. Hylas, under reservation of its rights, indicated immediately after the breach that if Strother and T3 could cure the breach and promptly make payment, Hylas would accept the payment, conduct a closing, and accept payment and transfer title. In addition, Hylas offered to assist Strother to obtain financing after Strother defaulted on the Agreement. However, Strother failed to obtain any financing, failed to complete the transaction and remains in default on the agreement.

Ultimately, in or about 2010, T3 and Strother informed Hylas that it would not purchase the yacht. Since that time, Hylas has worked to sell the yacht to prospective buyers in order to mitigate its damages. On or about December 2011, Hylas entered into an agreement with a third party for the sale of the yacht. On or about February 17, 2012, the Defendants learned of the impending sale which was to close on or about March 9, 2012, and filed a UCC statement ("UCC-1") with the Massachusetts Secretary of State, UCC Filing Number 201293903030. On or about March 7, 2012, the Defendants amended UCC-1 ("UCC-3") with the Massachusetts Secretary of State, UCC Filing Number 201294284750.

## II. The Court's preliminary injunction.

On April 30, 2012, this Court entered a preliminary injunction as follows:

> NOW, THEREFORE, it is hereby ORDERED that the Defendants terminate the UCC filings against Hylas, namely, the UCC-1 form (filing number 201293903030) and the UCC-3 form (filing number 201294284750); that the Defendants are hereby enjoined from filing additional UCC statements against Hylas or otherwise interfering in its sale of the Yacht to any third-party buyer; and that the Defendants are hereby enjoined from interfering with or arresting the Yacht after its sale to a third party.

> For the issuance of this injunctive relief, a movant is required to post a bond pursuant to Fed. R. Civ. P. 65. In the exercise of its discretion, the Court imposes a bond in the amount of $125,000, which Hylas has proposed, D. 29, and the Court finds sufficient in form and amount, under Fed. R. Civ. P. 65(c), to secure the issuance by this Court of the relief sought. The order of preliminary injunction will become effective upon the filing of the $125,000 bond by Hylas and its notice to the Defendants of such filing.

Preliminary Injunction Or. p. 2 (Apr. 30, 2012). The Court's Statement of Reasons (Apr. 30, 2012) found that the Plaintiffs had demonstrated a high likelihood of success on the merits of their breach of contract and declaratory judgment claims and found that there was a high likelihood that the Defendants' filing of the UCC-1 and UCC-3 was baseless.

### III. The bond is beginning to directly harm Hylas's ability to conduct its operations efficiently.

Hylas had to leverage funds to secure the bond initially, and was unable to obtain market rate financing for the bond at that time. Aff. Jachney, ¶ 6 (Apr. 18, 2013). As a result, Hylas is currently paying for premium financing at 6.5% per annum on the bond. Id. at ¶ 7. This rate will increase to 9% in May 2013. Id. at ¶ 8. Further, because of the bond, Hylas has had to expend additional cost and effort securing short-term financing for its operations, because it is "out of formula" with its bank. Id. at ¶ 7. Hylas's bank, Salem Five Cent Savings Bank, informed it that as of June 2013, Hylas will have to secure the bond in its entirety with $125,000 of its own funds. Id. at ¶ 10. This will impede Hylas's ability to conduct its operations, as much of its assets are illiquid (for example, Hylas has security interests in all of the yachts that it is building for its customers, as with Strother). Id. at ¶ 11.

### Argument

"The purpose of the bond [under Fed. R. Civ. P. 65(c)] is to indemnify the enjoined party if the court finds that the enjoined party has been wrongfully enjoined." Jacobson v. Lee, 26 F.3d 138 (Fed. Cir. 1994). It is within the Court's discretion to set the amount of a bond under Fed. R.

4

Civ. P. 65(c). Doctor's Associates, Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir.1996) (affirming district court's decision not to require bond); Moltan Co. v. Eagle-Picher Industries, Inc., 55 F.3d 1171, 1176 (6th Cir.1995) (district court has discretion to require posting of security); Stockslager v. Carroll Elec. Co-op. Corp., 528 F.2d 949, 951 (8th Cir.1976) (amount of bond required upon the issuance of a preliminary injunction vests within the sound discretion of the trial court and will not be reversed on appeal unless there is a clear abuse of discretion). Rule 65(c) does not require the issuance of a bond for every injunction. Int'l Ass'n of Machinists and Aerospace Workers v. Eastern Airlines, Inc., 925 F.2d 6, 10 (1st Cir. 1991); see also Crowley v. Local No. 82, Furniture and Piano Moving, 679 F.2d 978, 999-1001 (1st Cir.1982); see also Application of Kingsley, 802 F.2d 571, 578-79 (1st Cir.1986); Ferguson v. Tabah, 288 F.2d 665, 675 (2d Cir.1961).

> The First Circuit has established the standard for a preliminary injunctive relief:
>
> a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction." Women's Community Health Ctr., Inc. v. Cohen, 477 F.Supp. 542, 544 (D.Me.1979) (citations omitted).

Planned Parenthood League of Mass. v. Bellotti et al., 641 F.2d 1006 (1981). Of the four prongs of the standard, probability of success is by far the most important. See Waldron v. George Weston Bakeries, Inc., 570 F.3d 5, 8 (1st Cir. 2009). A deficiency in one factor can be overcome by superior strength in another factor.

The facts elicited in discovery have further minimized the likelihood of Strother's success on the merits of his claim and strengthened the Plaintiff's case. Second, the vessel at issue has been sold, and so much of the original basis for requiring the bond is moot. Third, the existence of the bond is beginning to harm Hylas's ability to operate efficiently. The continuation of the

bond in these circumstances will only serve to harm Hylas itself, undermining the protective nature of injunctive relief.

**I.      Strother's claims, which were tenuous at the outset of the case, have received virtually no support despite extensive discovery by all parties, and his likelihood of success on the merits is greatly diminished.**

There is no evidence of any fraud claim. The crux of Strother's fraud claim is that Hylas allegedly represented to Strother that it would obtain him financing. However, Strother's testimony is that he had conversations regarding the general *availability* of financing only, not any guarantee of financing:

> Q. Okay. I am going to ask you another question a little out of order. Prior to your signing the contract with Hylas, do you have any one single document where your desire to obtain financing to purchase the yacht is identified?
>
> A. There are documents -- By the way, when you say "I," it's T3 signing the contract. T3 Vistas, LLC signed the contract. Prior to that -- and you have been produced to you conversations with Hylas' agent out of Fort Lauderdale regarding financing the yacht.
>
> Q. What were those conversations?
>
> A. Basically interest rates, what's the going rate, what's available now. There are different terms, 20 year amortization, 30 year amortization, prime plus two; all different possibilities of financing were available.
>
> Q. In any documents that exist that were created prior to your purchasing the yacht -- prior to your signing the contract to purchase the Hylas 70, can you point me to any one single piece of paper, an e-mail, a letter, a telex, a memo, international Morse Code language, anything where Hylas indicated to you it would obtain financing for you?
>
> A. No.

Depo. Strother, 50:7-51:6 (Jan. 31, 2013); <u>see</u> <u>generally</u> Depo Strother, 50-56. He also testified that Hylas "guaranteed financing would be available," Depo. Strother, 67:13-24, but when

6

pressed, Strother testified that Hylas was relating to him an opinion by a third party[1]. Depo. Strother, 68:23-69:7. Strother testified that the only writing that he received was a "rate sheet" from Scott Financial that did not guarantee any financing. Depo. Strother, 56:7-23. He also testified that his agreement with Hylas did not guarantee financing. Depo. Strother, 62:18-20. Hylas's likelihood of success on the merits of the claim is therefore much greater than when their motion for injunctive relief was first filed.

Strother also claims that Hylas breached its agreement because it did not deliver a "yacht" to him. Depo. Strother, 68:6-17. He alleges that the yacht was supposed to be delivered to him fully commissioned, and that by not doing so, the boat was not, technically, "a yacht." Depo. Strother, 97:24-98:6. However, Strother misreads the unambiguous terms of the contract. While the contract provides that "The Yacht shall be presented to the Buyer for sea trials after commissioning," the very next paragraph states that "Title shall remain with the Seller until the Yacht is delivered to the Buyer upon final payment." Aff. Jachney, ¶ 14. Strother admits that he never tendered the purchase price for the yacht. Depo. Strother, 100:6-17. The condition precedent to delivery—payment—was therefore never met, and it is irrelevant whether the yacht was commissioned. Hylas therefore has a greater likelihood of success on the merits of this claim as well.

Lastly, Strother alleges that Hylas agreed to be paid $125,000 from Strother to finish commissioning the yacht and then put the yacht on the international market to attempt to recoup Strother's deposit. Depo. Strother, 119:24-120:9. Strother misreads the November 2, 2009, E-mail allegedly giving rise to this "agreement." At the time of the letter, Strother had failed to obtain financing for the yacht. Depo. Strother, 119:24-120:9. However, this E-mail does not

---

[1] Strother asserts that the third party, Melanie Jolles, was an agent of Hylas, but admitted having no evidence to support that assertion. Depo. Strother, 72:1-75:7.

evidence a binding agreement. First, the purpose of the E-mail, in part, was to provide for sale of the yacht to a different buyer by ensuring that it was commissioned in the event that Strother could not ultimately afford it. Aff. Jachney, ¶ 20. By commissioning the boat, it would be able to be sold, and Strother would have a chance of recouping some of his lost deposit. Aff. Jachney, ¶ 21. At no time in the letter does Hylas promise to sell the boat or guarantee that Strother will recover his deposit, Aff. Jachney, ¶ 16; in fact, Hylas says just the opposite:

> I cannot guarantee anything however I can state in good faith that I will try to market this yacht with the intentions of trying to not only recoup what is due to Hylas but also make every effort within a reasonable timeframe to sell for the higher pricing so that there is a very real possibility of reclaiming some of the earlier deposits already forwarded….

Aff. Jachney, ¶ 22. This precatory language is not an actionable offer to contract. Second, the payment of $125,000 is part of the purchase price of the yacht. Depo. Strother, 120:20-121:5. Strother indicated to Hylas that he did not want to lose the opportunity to purchase the yacht. Aff. Jachney, ¶ 19. Strother paid the $125,000, and Hylas used those funds to commission the yacht. Aff. Jachney, ¶ 18. Strother was already obligated to pay that amount to Hylas, and so to the extent that this was an attempt to contract at all, it was unsupported by new consideration.

## II.     The yacht has since been sold.

The purpose of the preliminary injunction, in part, was to prevent interference with the pending sale of the yacht. Aff. Jachney, ¶ 10. However, the yacht has since been sold. Aff. Jachney, ¶ 11. The only provision of the preliminary injunction that remains in force and effect is "that the Defendants are hereby enjoined from interfering with or arresting the Yacht after its sale to a third party." The purpose of the preliminary injunction is therefore much more limited, and the risk of harm to the Defendants is similarly reduced.

### III. The bond has impeded Hylas's ability to conduct its operations and Hylas's bank will demand that the bond be secured by cash as of June.

In light of the effect of the bond on Hylas, the equities argue for elimination of the bond. The existence of the $125,000 bond has impeded Hylas's ability to conduct its operations and is causing direct harm to Hylas. Hylas had to leverage funds to secure the bond initially, and was unable to obtain market rate financing for the bond at that time. Aff. Jachney, ¶ 6. As a result, Hylas is currently paying for premium financing at 6.5% per annum on the bond. Id. at ¶ 7. This rate will increase to 9% in May 2013. Id. at ¶ 8. Further, because of the bond, Hylas has had to expend additional cost and effort securing short-term financing for its operations, because it is "out of formula" with its bank. Id. at ¶ 9. Hylas's bank, Salem Five Cent Savings Bank, informed it that as of June 2013, Hylas will have to secure the bond in its entirety with $125,000 of its own funds. Id. at ¶ 10. This will impede Hylas's ability to conduct its operations, as much of its assets are illiquid (for example, Hylas has security interests in all of the yachts that it is building for its customers, as with Strother). Id. at ¶ 11.

### Certificate of Service

For the reasons stated above, the Plaintiff requests that this Court eliminate the bond.

Respectfully submitted,

HYLAS YACHTS, INC.,

by its attorney,

/s/ Jeffrey S. Baker
Jeffrey S. Baker
BAKER AND ASSOCIATES, P.C.
Suite 100
2 West Hill Place
Boston, MA 02114
Ph: 617 573 9505
Fax: 617 573 9503
BBO#544929
E-mail: bakerlaw@aol.com

Date: June 7, 2013

## **Certificate of Service**

On this day, June 7, 2013, I certify that I served or caused to be served on all other parties a true and accurate copy of this document and any supporting memoranda or affidavits by first class mail or ECF.

/s/ Jeffrey S. Baker
Jeffrey S. Baker